230 P.2d 252

STATE ex rel. DAY v. PARKER et ux.

No. 5306.

Supreme Court of New Mexico.

Oct. 24, 1950.

Rehearing Denied May 3, 1951.

Jose E. Armijo, Las Vegas, for appellant.

H. E. Blattman, Las Vegas, for appellees.

COMPTON, Justice.

The case involves the custody of Rita Beverly Day, minor daughter of appellant. At the time of her birth, April 21, 1945, the appellant was in the armed services of the Government and her mother, Beverly Clay Day, was living with her parents, the appellees. The mother died the following day and after the funeral there was some kind of an agreement between appellant and appellees regarding the custody of the child. Appellant contends that it was agreed appellees only should have the child until he was discharged from the army and was able to provide suitably for her. Appellees, on the other hand, contend that appellant agreed that they should have the child as their own until she arrived at an age when she could choose her own guardian.

Appellant was discharged August 1, 1946, and soon thereafter demanded possession of the child and this being refused, on June 16, 1947, filed suit for custody, alleging that she was unlawfully restrained of her liberty by appellees. Appellees answered, denying any unlawful restraint and alleged that they were detaining the child by virtue of the agreement with appellant. They also alleged that the child was prematurely born, very weak and requires constant attention by someone who is familiar with her case history, and that a change in custody would be injurious to her. After a hearing, the court made the following findings of fact:

"1. That Rita Beverly Day is a minor, born April 21, 1945, to Lamoine J. Day and Rita Clay Day, husband and wife.

"2. That the mother, Rita Clay Day, died April 22, 1945, as a result of childbirth.

"3. That the said Rita Beverly Day was prematurely born, approximately two or three months before the regular expectant period, was very weak, and required great care and attention to enable her to survive.

"4. That the respondents W. C. Parker and Bess Parker are the father and mother, respectively, of the said Rita Clay Day, deceased, with whom said decedent was making her home for some time prior to April 22, 1945.

"5. That the said Rita Clay Day, deceased, was buried April 23, 1945, and on said day, after the funeral, the said Lamoine J. Day and Bess Parker conferred with respect to with whom said child should remain and who should look after and care for her, and as a result of such conference, it was agreed between them that said Rita Beverly Day should remain with W. C. Par-

229

ker and Bess Parker, her grandparents, who should care for, rear and educate her, and that at such conference it was stated to said Lamoine J. Day that she, Bess Parker, did not feel that she would care to look after said child and then have its father take said child away after they had become attached to her, and that said Lamoine J. Day then agreed that said child should remain with her grandparents, W. C. Parker and Bess Parker, until she was reared and was old enough to decide for herself with whom she wanted to go.

"6. That at the time said Rita Clay Day died, the said Lamoine J. Day was engaged in the Military Service of the United States of America, and was released from such service sometime in August of 1946, and that after being so released, continued to permit the grandparents of Rita Beverly Day, W. C. Parker and Bess Parker, to have the said child and look after her.

"7. That due to its immature birth, the said child's vital organs were very weak, all of which required great care and constant attention, and that Bess Parker has at all times given said child the requisite and necessary attention and care, with the result that said child has become strong and is normal in every respect, except that she is a very nervous child and requires the care of a person who is thoroughly familiar with her case history.

"8. That it would be injurious to said child at this time to change her custody from that of Bess Parker and W. C. Parker, and to place her with anyone else who is not familiar with the child's history and her habit pattern, and that Bess Parker, grandmother of said child, is thoroughly familiar with the habit pattern and case history of said child."

From the facts thus found the court concluded that it would be for the best interest of the child to remain in the custody of appellees, pending further orders.

Subsequently, on April 12, 1948, appellant filed a petition to modify the judgment theretofore entered, alleging changed circumstances. He alleges that he has since remarried and now has a comfortable home, sufficient means and is otherwise able to provide properly for the child. It is alleged that his wife has a child by a previous marriage and that she is experienced in raising children, is fond of the child, Rita Beverly, and is willing to assume the responsibility of a mother to her. It is also alleged that appellee, Bess Parker, is in ill health, nervous, irritable and emotional and that her condition adversely affects the child. Other allegations are that appellees are trying to alienate the affections of the child, have attempted to adopt her and that they have violated the orders of the court with respect to visitation by appellant.

Upon consideration of the motion the court made the following additional findings:

"9. That since the 31st day of July, 1947, Rita Beverly Day has been in the custody of respondents; that they are fit and proper persons in all respects to have the custody of said child; that they are physically and financially able to support, care for, maintain and educate said child; and that they have a deep affection for her.

"10. That petitioner, Lamoine J. Day, father of Rita Beverly Day, has for years been employed by the Atchison, Topeka and Santa Fe Railway Company, at Melrose, New Mexico, in a position of responsibility in the Signal Department.

"11. That in the month of December, 1948, petitioner Lamoine J. Day remarried and that his wife has a child by a former marriage.

"12. That Lamoine J. Day, petitioner, is a person of good moral character and is as well able, physically and financially to support, care for, maintain and educate his child as the respondents.

"13. That the new matters alleged in the Petition of Lamoine J. Day to set aside and modify the order and decree of this Court made and entered on the 31st day of July, 1947, do not show a sufficient change of condition, or circumstances with respect to respondents' ability to care for, maintain, support, educate and rear said Rita Beverly Day to justify the Court in setting aside or modifying its order and decree made and entered on the 31st day of July 1947."

And again the court concluded that it was for the best interest of the child to remain with appellees.

■ Many of the cases hold that the custody of minor children may be affected by agreement of the parties. Wilkinson v. Lee, 138 Ga. 360, 75 S.E. 477, 42 L.R.A., N.S., 1013; Ex parte Burdick (Burdick v. Kaelin), 91 Neb. 639, 136 N.W. 988, 40 L. R.A., N.S., 887; Fletcher v. Hickman, 50 W.Va. 244, 40 S.E. 371. See annotations, 55 L.R.A. 896, 88 Am.St.Rep. 862. A different rule prevails here. In this jurisdiction the welfare of the child is the controlling consideration in determining custody. Bustamento v. Analla, 1 N.M. 255; Focks v. Munger, 20 N.M. 335, 149 P. 300; Pra v. Gherardini, 34 N.M. 587, 286 P. 828; Padilla v. Clancey, 35 N.M. 9, 288 P. 1048; In re Hogue (Crook v. Walker), 41 N.M. 438, 70 P.2d 764; Young v. Young, 46 N.M. 165, 124 P.2d 776; Cook v. Brownlee, 54 N.M. 227, 220 P.2d 378.

■ There are many considerations which enter into a determination of what is best for a child. It has long been a policy of the courts that the custody of very young children, particularly girls, should be awarded to the mother. Their ages, sex, health and physical condition are important elements to be considered. Ross v.

Ross, 89 Colo. 536, 5 P.2d 246, 78 A.L.R. 313; Hussey v. Whiting, 145 Ind. 580, 44 N.E. 639, 57 Am.St.Rep. 220; Sherry v. Doyle, 68 Utah 74, 249 P. 250. The reasoning of the cases is not without force here. The only mother the child knows is Mrs. Parker. She was placed with appellees when only two days old and, as stated by Mrs. Parker, she was a "tiny, tiny little thing." She was so weak and frail that it was necessary at times to arouse her to see if she were alive. She has always been nervous and has required constant medical attention. While her condition is improved, it is conceded that she has not completely recovered. These facts, substantial in character, were before the court as a basis of its judgment, and its findings are binding on appeal.

Appellant strongly relies upon the principal that as parent of the child he is entitled to its custody. We are not unmindful of the rule and, other things being equal, it cannot be questioned; however, where the interest of the child dictates, it is not unusual for the courts to award custody to parties having no legal right thereto. Bustamento v. Analla, supra; Cook v. Brownlee, supra; Padilla v. Clancey, supra.

We respectfully suggest that the welfare of the child is still a matter of controlling consideration. She has now reached the age when the natural parental relation should be instilled in her. There is evidence which strongly indicates that an effort has been made to prejudice her childish mind toward her father. The appellees, while greatly concerned, must realize that they have no such interest in the child as will entitle them to custody if efforts continue to so prejudice her against her father. Clearly, an attempt to destroy the natural affection which the child should have for her father runs counter to her best interests. And if, upon a subsequent hearing it should appear the parties are assuming an attitude detrimental to the child in this respect, the court will view same with the greatest concern.

The judgment is affirmed and it is so ordered.

BRICE, C. J., and LUJAN, SADLER, and McGHEE, JJ., concur.